JUDGE BUCHWALD

10 CV 5990

Bruce D. Katz, Esq. (BK2041)
BRUCE D. KATZ & ASSOCIATES
160 Broadway – Suite 908
New York, NY 10038
(212)233-3434
*Attorneys for Plaintiff*
*Automated Management Systems, Inc.*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AUTOMATED MANAGEMENT SYSTEMS, INC., )
)
)
Plaintiff, )
)
v. )
)
)
ROGERS, WUGHALTER, KAUFMAN, CONEDINE )
AND ZINNO, GRAYSON COMPUTER SERVICES, )
INC. and VINCENT GRAYSON, )
)
Defendants. )

---

ECF CASE

CIVIL ACTION NO.

10 CV 5990 (NRB)(JLC)

## COMPLAINT

Plaintiff, Automated Management Systems, Inc. ("AMSI"), by its undersigned counsel,

for its complaint alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.      AMSI is engaged in the development and distribution of original software

designed for the management of landlord-tenant law firms. AMSI's sole product is its Landlord

Tenant Legal Software System ("L&T LEGAL"), which was developed entirely by AMSI at

great expense over the past twenty-five (25) years. AMSI brings this action against defendants,

the New York law firm of Rogers, Wughalter, Kaufman, Conedine & Zinno ("Rogers

Wughalter"), the computer services firm Grayson Computer Services, Inc. ("Grayson

Computer") and Grayson Computer's principal, Vincent Grayson, for breach of contract, trade secret misappropriation, copyright infringement, unfair competition, and tortuous interference with contract.

2.      The Rogers Wughalter law firm is a former licensee of L&T LEGAL.  As a condition of its license agreement, Rogers Wughalter contractually promised to respect AMSI's copyright in L&T LEGAL, and to maintain confidential and not use any of AMSI's trade secrets embodied in L&T LEGAL.  Rogers Wughalter also contractually acknowledged AMSI's sole right, title, and interest in and to L&T LEGAL, and AMSI's exclusive right to reproduce L&T LEGAL, to prepare derivative works of L&T LEGAL, and to distribute L&T LEGAL.

3.      Rogers Wughalter has violated its contractual obligations, and, on information and belief, defendants have together misappropriated the trade secrets embodied in L&T LEGAL, infringed AMSI's copyright in L&T LEGAL, and engaged in unfair competition and tortious interference with contract.

4.      During and/or after the term of its license agreement with AMSI, Rogers Wughalter retained defendants Grayson Computer and Vincent Grayson to enable unauthorized use of L&T LEGAL by defeating security features contained therein, to make unauthorized copies of L&T LEGAL, to create unauthorized derivative works of L&T LEGAL, and to market an infringing software product that directly competes with L&T LEGAL.

5.      Defendants' unlawful actions have caused and will continue to cause severe and irreparable harm to AMSI.  The presence of another competing landlord-tenant software package in the narrow market for L&T LEGAL, defined by law firms that represent landlords, would have devastating consequences for AMSI and threaten its continued existence.

6.     AMSI therefore seeks the intervention of this Court to stop defendants' unlawful acts and to remedy the injuries that they have already inflicted upon AMSI.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the complaint pursuant to 28 U.S.C. §§ 1332, 1338, and 1367.

8.     Venue is proper in this district because AMSI's principal place of business is in this district and, upon information and belief, Rogers Wughalter's, Grayson Computer's and Vincent Grayson's principal places of business are all in this district.

## THE PARTIES

9.     Plaintiff AMSI is a corporation duly organized and existing under the laws of the State of New York and having a principal place of business at 160 Broadway, Suite 902, New York, New York 10038.

10.     Upon information and belief, defendant, Rogers Wughalter, is a partnership organized and existing under the laws of the State of New York and having a principal place of business at 800 Grand Concourse, Bronx, New York, 10451.

11.     Upon information and belief, defendant Grayson Computer Services, Inc., is a corporation organized and existing under the laws of the State of New York and having a principal place of business at 665 White Plains Road, Eastchester, New York, 10709.

12.     Upon information and belief, defendant Vincent Grayson is an individual, a resident of the State of New York, and a principal of Grayson Computer, and has a place of business c/o Grayson Computer Services, Inc., at 665 White Plains Road, Eastchester, New York, 10709.

## GENERAL ALLEGATIONS

13.     Developed by AMSI at great expense over the past twenty-five (25) years, L&T
LEGAL is the preeminent and most robust software system currently offered to the legal industry
designed for managing a landlord-tenant practice of any size.

14.     L&T LEGAL is a state-of-the-art, turnkey software system that automates a
landlord-tenant legal practice by automatically generating all necessary landlord-tenant legal
forms customized for a given tenant and/or legal proceeding and jurisdiction, maintaining an
automated docket to keep track of a given proceeding from commencement to completion, and
automatically generating transactional billing entries.  A copy of a sell sheet describing some of
the features of L&T LEGAL is attached hereto as **Exhibit A**.

15.     Defendant, Rogers Wughalter, is a New York law firm with a substantial
landlord-tenant practice.  Rogers Wughalter is a former licensee of L&T LEGAL.  On
information and belief, defendants Grayson Computer and its president, Vincent Grayson, were
retained by Rogers Wughalter to, *inter alia*, integrate L&T LEGAL into Rogers Wughalter's
computer network.

16.     More specifically, AMSI entered into a Software Subscription Agreement ("the
Agreement") with Rogers Wughalter effective June 9, 2008.  A copy of the Agreement is
attached hereto as **Exhibit B**, and the contents thereof are incorporated by reference into this
complaint.

17.     Under ¶3(a) of the Agreement, AMSI licensed Rogers Wughalter the right "Use"
L&T LEGAL on a month-to-month basis (¶2(g)) in exchange for the payment of monthly license
fees by Rogers Wughalter (¶2(c) and Schedule A) and Rogers Wughalter's agreement to comply

with various "Terms of Use," including a prohibition against unauthorized copying and the requirement to return *all copies* of L&T LEGAL to AMSI upon expiration of the Agreement.

18.     Under ¶1(b), "Use" is  defined as "storing, loading, installing, executing, or displaying the Software …" on a single device or a series of devices, and use of the Software by way of End User's server, which allows the use of the Software by all users in that environment." Under ¶1(e), "Terms of Use" is defined as "any and all prohibitions and restrictions on use, including any activities engaged in by End user in any environment available via End User's server(s)."

19.     Under the Agreement, license fees charged to Rogers Wughalter are based on its actual use of L&T LEGAL.  To enable AMSI to determine applicable license fees, the Agreement requires Rogers Wughalter to "provide AMSI with remote access to End User's Environment at all times" (¶2(j)).

20.     Rogers Wughalter acknowledged AMSI's trade secrets and exclusive intellectual property rights in L&T LEGAL in various terms of the Agreement.  Under ¶3(b), Rogers Wughalter acknowledged that "[t]he Software is owned, patented and copyrighted, as applicable, by AMSI"; and that the Agreement "confers no title or ownership and is not a sale of any rights in the Software".  Under ¶3(f), Rogers Wughalter acknowledged that the Software "contains proprietary information including trade secrets, knowhow and confidential information that is the exclusive property of AMSI" and that Rogers Wughalter will "at all times … maintain the confidentiality of this information and not sell, license, publish, display, distribute, disclose or otherwise make available this information to any third party … to persons not an employee of [Rogers Wughalter] without the prior written consent of AMSI".  Under ¶3(d), Rogers Wughalter was prohibited from, *inter alia*, modifying, reverse engineering, disassembling,

5

decompiling, accessing or determining the source code, or creating derivative works based on L&T LEGAL.

21.     Under ¶6(e), Rogers Wughalter agreed that its breach "of any of the restrictive covenants contained in this Agreement would result in irreparable injury and damage for which money damages would not provide an adequate remedy," and that "AMSI shall have the right to enforce the obligations set forth in this Agreement by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that AMSI may have for a breach, or threatened breach, of the provisions of this Agreement."

22.     Termination of the Agreement is governed ¶¶ 2(d) and 2(j), which allow either party to terminate the Agreement "with 60 days prior notice" and provide that upon termination, Rogers Wughalter "will no longer have any right to Use the Software and AMSI shall, as such, be permitted to de-install the Software … by remote access or other means upon 7 days advance written notice" (¶2(d)); and that "Upon termination, AMSI shall have the right to remove the Software from End User's environment" (¶2(j)).

23.     Rogers Wughalter breached the Agreement on May 4, 2010 by refusing to permit AMSI to access the Software as required by ¶2(j) of the Agreement.  As a result of this breach, AMSI forwarded a "60-day" Notice of Termination pursuant to the terms of the Agreement.  A copy of the Notice of Termination is attached hereto as **Exhibit C**.

24.     In subsequent correspondence, Rogers Wughalter agreed in writing that it would abide by the Agreement and provide AMSI with unfettered access to L&T LEGAL at all times prior to the termination date (**Exhibit D**).  Despite this promise, Rogers Wughalter again breached the Agreement on June 30, 2010 by refusing to provide AMSI with remote or direct

access to L&T LEGAL and by refusing to permit AMSI to remove L&T LEGAL from Rogers Wughalter's computer system as required by ¶¶ 2(d) and 2(j) of the Agreement.

25.     Furthermore, during a routine inspection of L&T LEGAL subsequent to the May 4, 2010 Notice of Termination, AMSI discovered that unauthorized copies of L&T LEGAL had been made from Rogers Wughalter's computer system, in violation of the Agreement, by defeating the security features embodied in L&T LEGAL.  On information and belief, these illegal copies were made by defendants Grayson Computer and Vincent Grayson at the specific request of Rogers Wughalter.

26.     To this date, Rogers Wughalter continues to be in material breach of the Agreement and has continually refused to permit AMSI to uninstall L&T LEGAL from its computer system and/or to return all copies of L&T LEGAL to AMSI, despite repeated requests by AMSI.

27.     After Rogers Wughalter cut off AMSI's ability to remotely access L&T LEGAL on June 30, 2010, AMSI's president visited Rogers Wughalter's offices on July 2, 2010.   While present at Rogers Wughalter's offices, AMSI'S president was advised that Rogers Wughalter had "hired a programmer" and created its own landlord-tenant legal software system" which was "up and running" as of July 2, 2010.

28.     AMSI's president was further advised on July 2, 2010 that Rogers Wughalter had purposefully cut off AMSI's ability to remotely access its L&T LEGAL software in violation of the Agreement.  He further advised that Rogers Wughalter would continue use L&T LEGAL for historical lookup, in violation of the Agreement.

29.     Although the Agreement requires only seven days' advance notice, AMSI's May 9, 2010 Notice of Termination (which was sent by facsimile, email and certified mail to all

7

partners of the Rogers Wughalter firm), provided Rogers Wughalter with sixty (60) days' notice of AMSI's intent to uninstall L&T LEGAL.  Despite this, and despite the terms of the Agreement, Rogers Wughalter has continually refused to permit AMSI to uninstall L&T LEGAL.

30.    The admission by Rogers Wughalter that the firm has "hired a programmer" to create its own L&T legal software system and that such system was already up and running as of July 2, 2010 raises a strong inference of unlawful copying of L&T LEGAL.  Creation of a landlord-tenant software system such as L&T LEGAL would take thousands of man hours and many months of time, even for a group of programmers.  Rogers Wughalter, along with Grayson Computer and Vincent Grayson could not have created such software unless they substantially copied L&T LEGAL.  Since it is not humanly possible for even a group of programmers to create a landlord-tenant software system in a short period of time, Rogers Wughalter's representations strongly indicate that its current "system" is a copy of L&T LEGAL and that defendants have stolen AMSI's confidential trade secrets and infringed its copyright.

## CLAIM I

(Breach of Contract Against Rogers Wughalter)

31.    AMSI repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

32.    The agreement between AMSI and Rogers Wughalter (annexed hereto as Exhibit B), contains several provisions that expressly protects the confidentiality and exclusive ownership of AMSI's proprietary information.

33.    Under ¶¶ 3(b) (d) and (f) of the Agreement, Rogers Wughalter acknowledged AMSI's exclusive ownership rights in L&T LEGAL and the trade secrets, knowhow and

confidential information therein and agreed to maintain confidential all such information and to refrain from modifying, reverse engineering, disassembling, decompiling, accessing or determining the source code, or creating derivative works based on L&T LEGAL.

34.     Under ¶¶ 2(d) and 2(j), Rogers Wughalter agreed to cease using L&T LEGAL and allow AMSI to uninstall L&T LEGAL upon termination of the Agreement.

35.     Rogers Wughalter breached one or more of the promises set forth in ¶¶ 2 and 3 of the Agreement by, *inter alia*, cutting off AMSI's ability to remotely access L&T LEGAL, refusing to permit AMSI to uninstall L&T LEGAL, making unauthorized copies of L&T LEGAL, modifying L&T LEGAL by defeating the security features contained therein, using AMSI's confidential information and trade secrets embodied in L&T LEGAL to design its own landlord-tenant software which provides features that compete with L&T LEGAL.

36.     Under ¶6(e) of the Agreement, Rogers Wughalter agreed that its breach of any of the restrictive covenants contained in the Agreement would result in irreparable injury and damage to AMSI and that AMSI has the right to an injunction without bond.

37.     AMSI has suffered tremendous and irreparable injury as a direct consequence of Rogers Wughalter's breach of contract.

## CLAIM II

(Trade Secret Misappropriation Against All Defendants)

38.     AMSI repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

39.     AMSI's L&T LEGAL software is an extensive program and its source code is highly confidential and proprietary, and a protected trade secret of AMSI.

40.     AMSI developed this highly confidential, proprietary and trade secret information over twenty-five years of work and millions of dollars in investment.  Such information is extremely valuable to AMSI, and provides AMSI with a substantial advantage over competitors in that it enables the firm to offer fully-automated, turnkey software for the management of a landlord-tenant legal practice.  This information constitutes valuable trade secrets of AMSI.

41.     The misappropriation of such trade secrets by a competitor would be extremely injurious to AMSI, as it essentially provides a roadmap to a substantial part of AMSI's business.

42.     AMSI protects these trade secrets from public disclosure and maintains their secrecy in several ways.  For example, all AMSI employees are instructed that documents, business practices, and information generated, followed, and/or gathered by the firm is highly confidential and may not be disclosed outside the office and to non-AMSI personnel.  AMSI's proprietary documents and other information are maintained in electronic form, and access to all computers within AMSI's office is password protected, so that unauthorized persons are barred from reviewing such material.

43.     Rogers Wughalter, in violation of its express contractual obligations, and in flagrant breach of trust, misappropriated AMSI's trade secrets by, *inter alia,* incorporating crucial and highly proprietary elements of the MA TIERS program into the ATS Software.

44.     The production, marketing, and distribution of the L&T LEGAL software by Defendants has caused, and continues to cause, grievous and irreparable injury to AMSI.

## <u>CLAIM III</u>

(Copyright Infringement Against all Defendants)

45.     AMSI repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

46.     The Agreement between AMSI and Rogers Wughalter (annexed hereto as Exhibit A) retains in AMSI all intellectual property rights associated with L&T LEGAL.  Under ¶3(b), Rogers Wughalter acknowledged that "[t]he Software is owned, patented and copyrighted, as applicable, by AMSI"; and that the Agreement "confers no title or ownership and is not a sale of any rights in the Software".  Under ¶3(d), Rogers Wughalter was prohibited from, *inter alia*, modifying, reverse engineering, disassembling, decompiling, accessing or determining the source code, or creating derivative works based on L&T LEGAL.

47.     In August 2010, AMSI applied to United States Copyright Office for a copyright registration for its L&T LEGAL software.

48.     Upon information and belief, the landlord-tenant software created by or on behalf of Rogers Wughalter incorporates literal and/or non-literal elements of L&T LEGAL, including but not limited to source code, object code, program architecture and structure, constituent routines and sub-routines and/or user interfaces.

49.     Upon information and belief, Rogers Wughalter, Grayson Computer and Vincent Grayson have incorporated these literal and/or non-literal elements of L&T LEGAL into their own landlord-tenant software without permission of AMSI and in violation of AMSI's copyright rights under 17 U.S.C. § 101 *et seq.*

50.     Upon information and belief, Rogers Wughalter, Grayson Computer and Vincent Grayson are currently using and/or marketing their own landlord-tenant software to the public notwithstanding that said software infringes AMSI's L&T LEGAL copyright and are causing AMSI tremendous injury.

## CLAIM IV

(Tortious Interference with Existing Contractual Relations Against
Grayson Computer Services, Inc. and Vincent Grayson)

51.     AMSI repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

52.     At all relevant times, AMSI had and has a valid agreement with Rogers Wughalter.

53.     Upon information and belief, at all relevant times, Defendants Grayson Computer and Vincent Grayson had and has actual knowledge of AMSI's Agreement with Rogers Wughalter, , and had and has knowledge of the confidentiality restrictions contained therein.

54.     Upon information and belief, Defendants Grayson Computer and Vincent Grayson intentionally interfered with AMSI's Agreement with Rogers Wughalter by falsely advising Rogers Wughalter that L&T LEGAL was the source of problems encountered by Rogers Wughalter with the computer network set up and installed by Grayson Computer and Vincent Grayson in the offices of Rogers Wughalter.

55.     As a result of Grayson Computer and Vincent Grayson's intentional interference with AMSI's Agreement with Rogers Wughalter, AMSI has been damaged.

56.     The conduct of Grayson Computer and Vincent Grayson as described herein constituted, and continues to constitute, intentional interference with AMSI's existing contractual relations.

## CLAIM V

(Unfair Competition Against All Defendants)

57.     AMSI repeats and re-alleges each and every preceding paragraph contained in this complaint as if fully set forth herein.

58.     Upon information and believe, while he was still under contract with AMSI, Rogers Wughalter planned to steal AMSI's intellectual property and trade secrets for its own use.

59.     Upon information and belief, Rogers Wughalter contracted with Grayson Computer and Vincent Grayson for the specific purpose of copying L&T LEGAL to create their own landlord-tenant legal software system, in direct competition with AMSI.

60.     Upon information and belief, Rogers Wughalter, Grayson Computer and Vincent Grayson did in fact misappropriate crucial elements of L&T LEGAL for inclusion in their own landlord-tenant legal Software, and have produced, marketed, and distributed such software in competition with AMSI.

61.     The misappropriation of AMSI's trade secrets and business reputation by Rogers Wughalter, Grayson Computer and Vincent Grayson constitutes unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, AMSI seeks judgment against Rogers Wughalter, Grayson Computer and Vincent Grayson as follows:

62.     On **Claim I** against Rogers Wughalter, AMSI seeks:

(a)     Pursuant to the parties' Agreement, a preliminary and permanent injunction barring the continued use of AMSI's L&T LEGAL software;

(b)     Pursuant to the parties' Agreement, a preliminary and permanent injunction barring the continued disclosure of AMSI's confidential and proprietary information;

(c)     An Order of Seizure directing Rogers Wughalter, in the presence of an independent consultant chosen by Rogers Wughalter (or the United States Marshal and/or county Sheriff in which each defendant is located), to remove the original and all copies of AMSI's L&T LEGAL from all computers in Rogers Wughalter's possession, custody, or control, pursuant to the provisions of Article 71 of the New York Civil Practice Law and Rules and Federal Rule of Civil Procedure 64.

(d)     Pursuant to the parties' Agreement, liquidated damages in the amount of $25,000.00;

(e)     Additional compensatory damages to be determined at trial;

(f)     Pursuant to the parties' agreement, costs and attorneys fees; and

(g)     Such other and further relief as the Court deems just and proper.

63.     On **Claim II** against Rogers Wughalter, Grayson Computer and Vincent Grayson,

AMSI seeks:

(a)     A preliminary and permanent injunction barring the continued misappropriation of trade secrets by Rogers Wughalter, Grayson Computer and Vincent Grayson;

(b)     An Order of Seizure directing Rogers Wughalter, Grayson Computer and Vincent Grayson to permit AMSI, in the presence of an independent consultant chosen by defendants (or the United States Marshal and/or county Sheriff in which each defendant is located), to remove the original and all copies of AMSI's L&T LEGAL software from all computers in the respective defendants' possession, custody, or control, pursuant to the provisions of Article 71 of the New York Civil Practice Law and Rules and Federal Rule of Civil Procedure 64.

(c)     Compensatory damages to be determined at trial;

(d)     Punitive damages of no less than $1,000,000.00; and

(e)     Such other and further relief as the Court deems just and proper.

64.     On **Claim III** against Rogers Wughalter, Grayson Computer, and Vincent

Grayson, AMSI seeks:

(a)     A judicial declaration that Rogers Wughalter, Grayson Computer and Vincent Grayson have infringed AMSI's copyright in L&T LEGAL;

(b)     A preliminary and permanent injunction barring the continued infringement of AMSI's copyright in L&T LEGAL by RogersWughalter, Grayson Computer and Vincent Grayson;

(c)     An Order of Seizure directing Rogers Wughalter, Grayson Computer and Vincent Grayson to permit AMSI, in the presence of an independent consultant chosen by

14

defendants (or the United States Marshal and/or county Sheriff in which each defendant is located), to remove the original and all copies of AMSI's L&T LEGAL software from all computers in the respective defendants' possession, custody, or control, pursuant to §503 of the Copyright Act, 17 U.S.C. §503.

  (d) Compensatory damages to be determined at trial;

  (e) Statutory damages under the Copyright Act;

  (f) Costs and reasonable attorneys fees as permitted by statute; and

  (g) Such other and further relief as the Court deems just and proper.

65. On **Claim IV** against Grayson Computer and Vincent Grayson, AMSI seeks:

  (a) A judicial declaration that Grayson Computer and Vincent Grayson have tortiously interfered with AMSI's contractual relations;

  (b) A preliminary and permanent injunction barring the continued tortious interference with contract by Grayson Computer and Vincent Grayson;

  (c) Compensatory damages to be determined at trial;

  (d) Punitive damages of no less than $1,000,000.00; and

  (e) Such other and further relief as the Court deems just and proper.

66. On **Claim V** against Rogers Wughalter, Grayson Computer and Vincent Grayson,

AMSI seeks:

  (a) A preliminary and permanent injunction barring the continued unfair competition by Rogers Wughalter, Grayson Computer and Vincent Grayson;

  (b) Compensatory damages to be determined at trial;

  (c) Punitive damages of no less than $1,000,000.00; and

  (d) Such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

**PLEASE TAKE NOTICE** that AMSI demands a trial by jury of all claims so triable.

Dated: August 6, 2010

      /s/_____

      By: Bruce D. Katz, Esq. (BK2041)
       160 Broadway, Suite 908
       New York, NY  10038
       (212)233-3434
       *Attorneys for Plaintiff*
       *Automated Management Systems, Inc.*

# EXHIBIT A

**Automated Management Systems, Inc.**

160 Broadway, Suite 902    phone:   212 / 608-5919
New York, NY 10038      fax:     212 / 608-6055
                 web:     www.amsiny.com

**We provide**
**Windows-Based,  Web Enabled,**
**e-Mail Interfaced,   Data Exchange Enabled**
## Software for the
## LANDLORD & TENANT
## Legal Profession

## LANDLORD & TENANT OFFICE DESKTOP SYSTEM

This is a "State of the Art" full-featured system that allows you to start a case and see it through to the end, continually updating it along the way.

These are some of the system highlights:

### • LEGAL FORMS

Enter, print and invoice the following forms:

✓ Rent Demands (3-Day, 5day, 10 Day) Proceeding (Section8)
✓ Notice of Petition & Petition Non-Payment
✓ Federal Collection Notice
✓ Petition / Holdover
✓ Post Cards
✓ Notice of Petition Holdover
✓ Default Warrant Affidavit
✓ After Trial Warrant Affidavit
✓ Non-Military Affidavit
✓ Notice to Terminate
✓ Warrants, Warrant Requests
✓ Notice of Motion
✓ Trial Letters
✓ Affidavit of Service
✓ Billing Worksheets
✓ Affirmation
✓ Certification Eviction
✓ Affidavit
✓ Notice of Discontinuance



### • COURT CALENDAR

The system allows you to enter and update the outcome of your court cases, adjournments, follow-up payment schedules, repairs and comments for each case. An extensive billing function is included. A Calendar report, by borough, time and part, and an optional Billing Worksheet and Case History Report for each case on the Calendar are provided. The system has an automatic interface of the Court Calendar to Microsoft Outlook and Palm Pilot.

### • WARRANT TRACKING

The system tracks and automatically bills the full cycle of your Warrants from generation of the form for the Marshal to the eviction. Included in these actions are warrant requested, rejected, issued, served, re-served, re-mailed, on hold, canceled, possession scheduled, eviction and abort eviction. Electronic generation of warrants to the Marshall's office is available.

### • BILLING/ACCOUNTS RECEIVABLE

Automatic invoicing of Forms and other billable actions such as Court Calendar, Warrant Service, Re-Service of a Warrant, Blue Back Notices and Affidavits, Professional Service.  A ledger showing a breakdown by Client/ Landlord is standard.  A full Accounts Receivable System including Invoice Register, Aged Trial Balance Customer Statements, Cash Receipts Register are included.

### • MOTIONS

Generate Motion Form and automatically bill the following:

✓ Blue Back Cover          ✓ Affidavit of Service
✓ Notice of Motion         ✓ Affidavit
✓ Notice of Entry           ✓ Affirmation
✓ Notice of Default

### •CASE MANAGEMENT SCHEDULER AND REMINDERS

Let the system remind you to move a case forward by invoking this program. Each 'action' has a customizable parameter, which allows you to specify the amount of days must pass before the next action can take place. This sub-system organizes and retrieves the cases that need to be worked on. You can work directly from this system to move the case to the next step. The System also permits the entry of a Reminder Action that can be used to track any event related to the landlord and tenant legal process. Information can be emailed directly to you Client.

### • PROFESSIONAL SERVICE

Customize and invoice any type of service you want.  Includes time or flat rate billing methods, disbursements, and custom billing descriptions.   Automatically update to Accounts Receivable.

## • CASE HISTORY

You have the ability to see an up-to-the-minute status of any case. Search by Client, Landlord, Index Number, or Tenant Name. See action-by-action in detail or in summary format. Displays or prints.

## • ATTORNEY COMMISSION AND PRODUCTION REPORTING

Ability to provide commission reporting based on the transactions of the system and deduction of certain overhead cost. The system will also track attorney production in terms of amount of case transaction and billings.

## • E-MAIL/FAX ENABLED

Ability to e-mail and/or fax directly from the system to your clients copies of any forms, a Case Status Report, Court Status Report, and Monthly Production Report Invoices, Customer Statements or any other reports from the system on a daily/monthly basis. These functions reduce significantly the telephone calls between your staff and your client's staff. The client will know daily what court cases are scheduled, the result of a court appearance, when a new case was started, and many other events and reminders pertaining to a case.

## • ALERTS

This system allow for the creation of a library of Alerts. For example an "Alert" could be the event of a rent demand expiring or a Client falling below an amount in monthly billing. Once the Alerts are created the system allow you to associate this Alert with a certain "Action". This Action may take several forms. An example could be automatically e-mailing the Client and also e-mailing an internal staff members.

## E-MAIL STATUS REPORTING

Each night the system analyses the Databases and extracts for each Client a real time report of the status of their cases. The system will report a complete status including for example rent demands that are expired, court cases that are scheduled, results of court appearances and many other incidences in the system. The system will e-mail or fax this report to the Client.

## EDI SUB-SYSTEM

This system allows Section 8, rent demand and petition transactions to be imported directly from your Client's realty Management System. The system also provides for status and invoice transactions to be electronically sent to you Client's Reality Management System to be updated automatically. This system reduces significantly data input for both you and your Client.

## L&T QUEST – ONLINE WEB INQUIRY SYSTEM

L&T Quest is a web based Case Inquiry and Update System that will provide for information interchange between the Landlord & Tenant Law Firm and their Realty Clients.

**L&T Quest Client functions consist:**

### •CASE INQUIRY

The Client will have access, via the web, to their cases for inquiry purposes. Please note that the Realty Client will only have access to their cases.

### •CALENDAR INQUIRY:

This function allows your Realty Client to inquire on upcoming court cases and the results of daily court appearances.

### •CLIENT's THINGS TO DO.

This function will allow the Realty Client to inquire status of cases by a particular action and then move the case along in the L&T Process. A client may want to cancel a rent demand after payment of rent or may want to proceed to the dispossess phase.



### •NEW ENTRY PROCEEDING:

Rent Demand / Section 8 Certification / Dispossess Entry -The Client will enter the Building number or name and the pertinent building number will be displayed, Entry of the apartment number, tenants name under tenants if any will be entered, Commercial or Residential will be checked. The operator of the Realty Client will then enter the dates and amount of rents due along with any miscellaneous charges that are due. The Client can enter any notes required on this case.

### •SECURITY

The System will contain a high degree of security. Each Reality Client will be protected by a logon id and a password. Additionally each logon Id can be restricted to only certain functions within the L&T QUEST system. For example a specific Client ID (operator) may have the privilege to inquire on case status however that person would not be permitted to update a payment on a stipulation, or cancel a rent demand or convert a rent demand to a Petition. A manager ID would have access to all user functions. All transactions that will be updated will be stamped with time and user id for audit and security purposes.

# EXHIBIT B

### *SOFTWARE SUBSCRIPTION AGREEMENT*

THIS SOFTWARE SUBSCRIPTION AGREEMENT (this "Agreement") is made as of June 9, 2008 between AUTOMATED MANAGEMENT SYSTEMS, INC. hereinafter referred to as AMSI ("LICENSOR") on the one hand, and Rogers Wughalter  Kaufman Corredine &Zinno, hereinafter referred to as ("End User"), on the other.

Whereas, LICENSOR develops proprietary computer programs and sells use subscription licenses for such proprietary computer programs together with or apart from accompanying copyrighted material and documentation  and

Whereas, "End User" desires to obtain the benefits thereof and, in return for which, is willing to abide by the obligations and fee agreements applicable to AMSI's use licenses in AMSI's proprietary computer programs.

NOW THEN, for good and valuable consideration, including, but not limited to the subscription license granted in accordance with this Agreement; AMSI hereby grants to End User a non-exclusive, non-transferable and limited license to use the software, strictly in accordance with the software operating methodologies described within the software and in accordance with the instant agreement, subject to, but not limited to, the following terms and conditions:

## 1. DEFINITIONS

a. "Software" means AUTOMATED MANAGEMENT SYSTEMS, INC.'S (Hereinafter "AMSI") "LANDLORD-TENANT LEGAL SYSTEM" Software with the current functionality as provided by AMSI. It also includes any accompanying instructions, documentation, periodic upgrades, and other related materials.

b. "Use" means storing, loading, installing, executing, or displaying the Software on a single device or a series of devices, and use of the Software by way of End User's server, which allows the use of the Software by all users in that environment.

c. "Product" means the aforesaid Software product and its documentation as built at the time of the installation and periodic updates thereto.

d. "License" means the Software license grant and general license terms set forth herein.

e. "Terms of Use" means any and all prohibitions and restrictions on Use, including any activities engaged in End user in any environment available via End User's server(s).

f. "Environment" means End User's network Workgroup or Domain.

g. "End User" (sometimes referred to as "you") means the individual or entity who purchases the subscription under this Agreement.  Also referred to as 'Subscriber".

h. "Customer" means End User and any entity or individual who uses the Software through End User's subscription.

I. "This Agreement" means this entire Software Subscription and License Agreement.

j. "Subscriber" (sometimes referred to as "you") means the individual or entity who purchases the subscription under this Agreement.  Also referred to as 'End User".

k. "Upgrade" means a new release of the Product that includes a substantial new facility or capability.

## 2. SUBSCRIPTION TERMS

a. As part of this subscription, Subscriber receives a License as described below. AMSI will provide updates to the Software, such as correction of "bugs" and certain limited improvements to existing functionality of the Software as AMSI may choose to provide. The subscription also includes the right to receive any Upgrades or Reissues by AMSI. AMSI will, within its own discretion, determine whether and on what terms any Upgrade, Reissue or new product release will be made available to existing Subscribers.

b. The subscription entitles Customer to receive telephonic technical support relating to the Software only. Said telephonic technical support does not include matters relating to hardware or networking in End User's environment.

c. The end user will be charged pursuant to the fee schedule, negotiated and agreed to for good and valuable consideration, as annexed hereto in Schedule "A".  If you accept this Agreement and undertake this subscription, you are authorizing AMSI to, issue invoices as applicable, in approximately 30 day intervals, for the amounts due pursuant to schedule "A" hereof based upon your monthly rental.  If for any reason any of our charges for these fees remain unpaid or in dispute for a period exceeding 90 days, your subscription and license to Use the Software will terminate with 60 day prior written notice. It is your sole responsibility to ensure that payment is made and to notify AMSI (via the AMSI Help Desk) of any different billing instructions if you cancel or wish to change the notification method and/or address for our billing purposes.

d. Either party may terminate the subscription and Software License with 60 day prior notice for failure to comply with any terms of this Agreement, including Software License terms or Terms of Use. Immediately upon termination, Customer will no longer have any right to Use the Software and AMSI shall, as such, be permitted to de-install the Software from Customer's computer system by remote access or other meansupon 7 days advanced written notice.

e. Subscriber may not assign or transfer this Agreement. Any such attempted assignment or transfer will be null and void. AMSI may terminate this Agreement in the event of any such attempted assignment or transfer.

f. By accepting this Agreement and purchasing this Subscription, Subscriber represents and warrants that, if a natural person, Subscriber is at least 18 years of age and/or is otherwise legally able to enter into a binding contract. If the end user is a business entity, the signatory hereto represents that (s)he has the requisite authority and capacity to bind said business entity hereto.  Additionally, Subscriber represents and warrants that Subscriber is not a citizen of Cuba, Iran, Libya, North Korea, Syria or Sudan or a citizen of any other country that is, or an entity that is restricted by the United States government from receiving certain types of software.

g. The Subscription will continue on a month to month basis at the then prevailing rates established by AMSI which may differ from those described herein but such Subscription will remain subject to all other terms of this Agreement. AMSI reserves the right to adjust the monthly subscription fee(s) at any time after one year upon sixty days written  notice to End User.  Said notice shall be delivered in accordance with the notice provisions of this agreement.  This agreement may be cancelled upon 60 days written notice to either party.

h. Customer may  make a back-up copy of the software on a redundant disaster recovery sight and another server for redundant system protection without the written consent of AMSI which is given in this contract.  AMSI retains any and all rights in copies made for back-up purposes.  Re-Installation may only be effected by AMSI for no fee.  No re-installation may be effected by either End User or any Third Party Vendor.  End User, is not permitted to re-install the software on a different server or computer or within a different environment without the written consent of AMSI.  Re-Installation shall be performed by AMSI

at no charge. Request for any authorizations hereunder shall be made in writing pursuant to the notice provisions of this agreement and not unreasonably withheld.

i. Training in the operations and use of the software, including but not limited to the training of End User Personnel in the areas of Direct supervisory functions relating to System Operation, use Functions relating to the system are included in the rental price listed in Schedule A.

j. End User shall provide AMSI with remote access to End User's Environment at all times. Access codes for such access and/or installation of necessary software within End User's Environment, workgroup or domain shall be made within a reasonable time of AMSI's request. AMSI access will be strictly related to AMSI's software files and will respect the confidentiality of other Clients files. AMSI will not access files not related to AMSI's system. Said remote access shall be used by AMSI to effect certain system functions including but not limited to Updates and corrections, Printing of Billing Report(s), troubleshooting, protection of security devices, continuing activation and polling and metering of usage. End User hereby acknowledges that the refusal to provide the said remote access shall prohibit AMSI from properly billing End User for Usage and that were said denial of access to continue, AMSI would be unable to quantify the Usage for said effected periods. Accordingly, End User agrees that in the event that remote access is refused for a period exceeding 5 days after written request for such access pursuant to the notice agreements hereof, that AMSI shall be entitled to the sum of $250.00 per day as liquidated damages and not as penalty for each day that access is withheld unless refusal of access is of no fault of users. Such liquidated damages shall continue for a period of 55 days (including non-business days) at which time the software shall cease to be activated pursuant to the Software's internal controls. Client or AMSI may terminate this agreement 60 Days from written notice of such termination. Upon termination, AMSI shall have the right to remove the Software from End User's environment.

l. Notifications pursuant to this agreement shall be directed to, via Certified mail, Return receipt requested and by facsimile transmission:

If to AMSI: AMSI Attn.: James J. Traina, 160 Broadway, Ste 902, New York NY 10038 Fax :( 212)608-6055.

*Mr Corredine*

If to End User: Mr. Rogers, Mr. Wughalter, Mr. Kaufman., Ms Zinno,800 Grand Concourse ,Bronx, NY 10451 Fax 718-585-8969

## 3. LICENSE GRANT AND TERMS

a. During the Term of Agreement, subject to continuing payment of monthly fees as set forth herein and to compliance with Terms of Use and the Software License, Subscriber will have a license that entitles End User use of the Software within End User's environment as defined herein. If Subscriber allows another entity or individual to Use the Software, Subscriber will be liable for compliance with this Agreement, and for any violations by that user of the Terms of Use or Software License.

b. The Software is owned, patented and copyrighted, as applicable, by AMSI. The Software License confers no title or ownership and is not a sale of any rights in the Software. Customer is granted only the right to Use the Software without right of sublicense.

c. Customer must retain all patent, copyright notices and other proprietary legends in or on the original Software. Customer may not remove from the Software, or alter, any of the AMSI trademarks, trade names, logos, patent or copyright notices or markings, or add any other notices or markings to the Software. Customer may not copy the Software onto any public or distributed network.

d. Customer may not modify, reverse engineer, disassemble, decompile or otherwise attempt to access or determine the source code of the Software, copy, reproduce or distribute the Software in any way in

3

whole or in part or create any derivative work based on the Software. Any use of these materials in any other work environment or networked computer environment, including remote usage of the system, for any purpose is prohibited. The Software is copyrighted and any unauthorized use of it is prohibited. If Customer breaches any of these terms, the License to Use the Software automatically terminates and Customer must immediately destroy any installed or printed materials.

e. Customer may not export or re-export this software or any copy or adaptation in violation of any applicable laws or regulations. Without limiting the generality of the foregoing, software, technology or services provided under this license agreement may not be exported, re-exported, transferred or downloaded to or within (or to a national resident of) countries under U.S. economic embargo including the following countries: Cuba, Iran, Libya, North Korea, Sudan and Syria. This list is subject to change.

f. Customer agrees that Software contains proprietary information including trade secrets, know how and confidential information that is the exclusive property of AMSI. During the period this Agreement is in effect and at all times after its termination, Customer and its employees and agents shall maintain the confidentiality of this information and not sell, license, publish, display, disclose or otherwise make available this information to any third party nor use such proprietary information concerning the Software, including any Database files, Source Code, Dynamic Link Libraries ("DLL"s), Application Program Interfaces ("API"s), user manuals and screens, to persons not an employee of Customer without the prior written consent of AMSI.

g. For a period of five years following any termination, the End User shall not, directly or indirectly hire, solicit, or encourage to leave AMSI 's employment, any employee, consultant, or End User of AMSI or hire any such employee, consultant, or Company who has left AMSI's employment or contractual engagement within five years of such employment or engagement. The parties hereto acknowledge that the knowledge and skills of such employee(s), consultant(s), or Company(s) are of a special, unique, unusual, and extraordinary character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in any action at law, and the breach by the End User of any of the provisions of this Agreement will cause AMSI irreparable injury and damage. The End User expressly agrees that AMSI shall be entitled to injunctive and other equitable relief in the event of, or to prevent, a breach of any provision of this Agreement by the End User. Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies that AMSI may have for damages or otherwise. The various rights and remedies of AMSI under this Agreement or otherwise shall be construed to be cumulative, and no one of them shall be exclusive of any other or of any right or remedy allowed by law.

## 4. DISCLAIMERS AND LIMITATIONS

a. TO THE EXTENT ALLOWED BY LAW, THIS SOFTWARE IS PROVIDED TO YOU "AS IS" WITHOUT WARRANTIES OR CONDITIONS OF ANY KIND, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, AMSI SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTIES, NON-INFRINGEMENT, TITLE, ACCURACY OF INFORMATIONAL CONTENT. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY AMSI OR AMSI'S AUTHORIZED REPRESENTATIVES SHALL CREATE A WARRANTY. AMSI DOES NOT REPRESENT THAT THE SOFTWARE WILL BE OPERATIONAL AT ALL TIMES OR WILL BE FUNCTIONING PROPERLY WHEN YOU OR OTHERS WISH TO ACCESS THE FUNCTIONALITY OF THE SOFTWARE. THE SOFTWARE MAY BE UNAVAILABLE AT TIMES FOR MAINTENANCE OR FOR A VARIETY OF OTHER REASONS. WE ARE NOT LIABLE TO YOU FOR ANY PERIODS OF UNAVAILABILITY AND YOU WILL NOT BE ENTITLED TO ANY REFUNDS FOR THOSE PERIODS WHEN THE SOFTWARE IS NOT AVAILABLE OR IS NOT FUNCTIONING PROPERLY. Some jurisdictions do not allow exclusions of implied warranties or conditions, so the above exclusion may not apply to you to the extent prohibited by applicable laws.

b. EXCEPT TO THE EXTENT PROHIBITED BY LAW, IN NO EVENT WILL AMSI OR ITS SUBSIDIARIES, AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, CONTRACTORS OR SUPPLIERS BE LIABLE FOR DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR OTHER DAMAGES (INCLUDING LOST PROFIT, LOST DATA, OR DOWNTIME COSTS), ARISING OUT OF THE USE, INABILITY TO USE, OR THE RESULTS OF USE OF THE SOFTWARE, WHETHER BASED IN WARRANTY, CONTRACT, TORT OR OTHER0 LEGAL THEORY, AND WHETHER OR NOT AMSI WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. AMSI's and its suppliers' entire liability and your exclusive remedy shall be, at AMSI's option from time to time exercised subject to applicable law, repair or replacement of the Product.

c. NOTE, EXCEPT TO THE EXTENT ALLOWED BY LOCAL LAW, THESE WARRANTY TERMS DO NOT EXCLUDE, RESTRICT OR MODIFY, AND ARE IN ADDITION TO, THE MANDATORY STATUTORY RIGHTS APPLICABLE TO THE LICENSE OF THE SOFTWARE TO YOU; PROVIDED, HOWEVER, THAT THE CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS IS SPECIFICALLY DISCLAIMED AND SHALL NOT GOVERN OR APPLY TO THE SOFTWARE PROVIDED IN CONNECTION WITH THIS WARRANTY STATEMENT.

d. AMSI DOES NOT PROMISE THAT THE SOFTWARE WILL FUNCTION ON OR BE COMPATIBLE WITH YOUR COMPUTER SYSTEM. AMSI DOES NOT PROMISE OR WARRANT THAT YOUR COMPUTER SYSTEM WILL BE COMPATIBLE WITH THE FUNCTIONALITY OF THE SOFTWARE. IT IS CUSTOMER'S SOLE RESPONSIBILITY TO ENSURE THAT CUSTOMER'S COMPUTER SYSTEM AND INTERNET ACCESS ARE COMPATIBLE WITH THE SOFTWARE AND THE SERVER FUNCTIONALITY.

**5. PRIVACY POLICY**

a. We store and preserve End User Content and information in accordance with established policy. AMSI shall endeavor to not disclose End User's information to the fullest extent.

**6. GENERAL PROVISIONS**

a. This Agreement and any disputes arising hereunder shall be governed by the laws of the State of New York, United States of America, without regard to conflicts of laws principles. Customer hereby expressly consents to the jurisdiction and venue in State and Federal Courts located within the State of New York, County of New York over any disputes arising from or related in any manner to this Agreement.

b. If any term or provision herein is determined to be illegal or unenforceable, the validity or enforceability of the remainder of the terms or provisions herein will remain in full force and effect. Failure or delay in enforcing any right or provision of this Agreement shall not be deemed a waiver of such right or provision with respect to any subsequent breach. Provisions herein which by their nature extend beyond the termination of any license of Software will remain in effect until fulfilled.

c. This Agreement is the final, complete and exclusive agreement between the parties relating to the subject matter hereof, and supersedes any previous communications, representations or agreements between the parties, whether oral or written, regarding transactions hereunder. Customer's additional or different terms and conditions will not apply. This Agreement may not be changed except by an amendment signed by an authorized representative of each party.

d. As a further inducement to AMSI to make and enter into this Software Subscription Agreement and in consideration hereof, AMSI and End User covenant and agree that in any action or proceedings brought on, under or by virtue of this Software Subscription Agreement, AMSI and End User shall and do hereby waive trial by jury.

5

e. Because AMSI granting of the instant Software Subscription Agreement to End user is unique, and because End User had access to and has become acquainted with the Proprietary Information of AMSI, and because any breach by End User of any of the restrictive covenants contained in this Agreement would result in irreparable injury and damage for which money damages would not provide an adequate remedy, AMSI shall have the right to enforce the obligations set forth in this Agreement by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that AMSI may have for a breach, or threatened breach, of the provisions of this Agreement. End User agrees that in any action in which AMSI seeks injunction, specific performance or other equitable relief,

End User will not assert or contend that any of the provisions of this Agreement  are unreasonable or otherwise unenforceable.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

AMSI:                                                By: 11/21/18

                                                     Name: James J Traina
                                                     Title: President

Rogers Wughalter Kaufman Corredine & Zinno
  ("End User"):                                      By: _____
                                                     Name: E WUGHALTER
                                                     Title: PARTNER

**Schedule A**

6

**Note: These costs do not include any applicable federal, state, or local sales or use taxes.**

| *FUNCTION* | *AMOUNT* |
| --- | --- |
| *Dispossesses/ Post Cards* | |
| *Federal Collection Notice* | |
| *Rent Demand(3,5, 10, 15 Day)* | |
| *Section 8 Certification* | |
| *Non-Military* | |
| *Warrant Tracking* | |
| *Court Appearance* | |
| *Notice to Cure* | |
| *30 Day Notice Of Termination* | |
| *Holdover* | |
| *Blue Backs( All Motions)* | |
| *A/R-Case Management* | |
| *Professional Service Billing* | |
| *Default/AfterTrial, Warrant Afidavit* | |



**EMAIL Support** 

**EDI Support**

Training time is unlimited

# EXHIBIT C

# Automated Management Systems, Inc.

May 9, 2010

Rogers Wughalter Kaufman Corredine & Zinno
800 Grand Concourse
Bronx, NY 10451

Dear Mr. Wughalter, Mr. Kaufman Mr. Corredine Ms Zinno

Over the past several months I have alerted you to the fact that your network has been causing server damage to your files. As a result my staff has had to spend numerous hours having to reconstruct those same files during the past six or seven months. Your hardware vendor has insisted that it is my software that has corrupted the files and you apparently have taken that position. You have taken this position without any professional knowledge of how software and hardware systems work and have refused to have any other expert look into the situation with a fresh eye unencumbered by the dynamics of present situation. The fact is that your present hardware vendor is making a lot of money from your account and might be held accountable if a new expert would look at the present installation and find some flaws in that installation.. In my dealings with you firm I am aware of how unsophisticated you are in terms of having a network in your offices. Instead of presenting a technical explanation of what has transpired I would like to present a logical business discussion. I am the largest software vendor in NYC area in the Landlord and Tenant Legal profession. I have over 80 installations of this software with many accounts far larger than yours. Mr. Kaufman once called me a mom & pop shop when we were first starting. I laughed this ignorant comment off, since I knew, and my clients knew, I was the largest and the best in the industry.  In all of the over 80 accounts, I have not had this problem of constantly corrupting files. Mr. Wughalter brazenly called my accounts without my permission and verified that fact.  Logically, how would I be able to support these many accounts if my software created these problems?.  I have an impeccable reputation in your industry as you must have examine before you went into business with me. As you know I make money when you are up and running and using the system. Where is the motivation to have installed a system that corrupts files and prevents you from making money for me.  I think you may have to focus a moment on the motivation of your hardware vendor. He knows that I do not believe he is capable. He also knows that I know his was thrown out of Novick. He knows that I am aware that he is in litigation with Alfred Greenberg for overcharging and he was expelled from several other accounts which I am aware of.  His motivation is to get me out of this account, since I know his history and I feel very uncomfortable dealing with him especially when he has access to my software.

However, with your complicity, your vendor has succeeded in destroying our relationship. You have preformed the most egregious act by purposefully denying me access to my property, my Landlord and Tenant system. At this point I cannot monitor my anti-copying devices and I feel extremely threatened of software coping by your vendor. He has many times bragged about being a Foxpro programmer and that he knows my product.

As a result of your abrogation of your responsibilities under our software contract namely willfully denying me access to my property I am invoking, as per contract, a sixty day termination of service. This will be effective July 9 2010. The service will stop at such time and f

168 Broadway   Suite 902
New York, NY 10038
212•608-5919
Fax: 212•608-6055
www.amsiny.com

# Automated Management Systems, Inc.

will remove my software from your system.

During the 60 day period hence from this day my staff will continue the extra work uncorrupting your files as they occur but don't expect immediate response since this task takes away from me supporting my other clients. I must insist that you restore the access to my software immediately and that this notice serves as my five day notice to cure before the penalty phase of my agreement commences.

As per contract you are allowed on backup copy of the software. You have been taking a daily copy of my LT directory which is not allowed. You are only allowed to back up the data. You must immediately stop this practice. If you are taking backups off site which I assume you are then you are effectively taking copies of my software off your machine and taking them off site. You must stop this practice since this exposes you to a great liability. Please let me know when you have stopped this practice and that any offsite backups have be destroyed with my LT Directory on them.

In the past month you have forced me to work in an unstable hardware environment with a uncooperative hardware vendor who has blatantly undermined my credibility, and a staff that has become increasing hostel. You management, in the person of Mr. Wughalter, has been dismissive when I have tried to bring these problems to his attention. He even hung up on me in a very unprofessional manner. Mr. Wughalter effectively refused to accept another expert to review your installation. You are forcing me to work at a loss. No business man can work in these circumstances and you have made no effort to rectify the situation.

Very truly yours;

James Traina

Sent by fax, e-mail, certified letter

160 Broadway • Suite 902
New York, NY 10038
212•608-5919
Fax: 212•608-8055
www.amsiny.com

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X M. Ultich ☐ Agent ☐ Addressee

B. Received by ( Printed Name) | C. Date of Delivery 5/11/20∞

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

ROGERS, WUGHALTER
KAUFFMAN
800 GRAND CONCOURSE
BRONX 10451

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

7007 2680 0002 3015 3282

PS Form 3811, February 2004 — Domestic Return Receipt — 1025

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

| | | |
|---|---|---|
| BRONX NY 10451 | | |
| | $1.05 | 0005 |
| | $2.80 | 04 |
| Return Receipt Fee | $2.30 | |
| Restricted Delivery Fee | $0.00 | |
| Total Postage & Fees | $6.15 | 05/10/2010 |

ROGERS, WUGHALTER, KAUFMAN
800 GRAND CONCOURSE
BRONX NY 10451

3282 3015 0002 2680 7007

PS Form 3800, August 2006 — See Reverse for Instructions

# EXHIBIT D

## James Traina

**From:** Andrea Zinno [AZinno@rwk800.com]
**Sent:** Monday, May 10, 2010 3:06 PM
**To:** 'James Traina'
**Subject:** RE: Termination of Contract

Jim,

You have access. I will tell Shan to contact you to reschedule an appointment with Shmuel Judkovitz.

Andrea

**From:** James Traina [mailto:jtraina@amsiny.com]
**Sent:** Monday, May 10, 2010 2:43 PM
**To:** AZinno@Rwk800.com
**Subject:** RE: Termination of Contract

Andrea

I will abide by the terms of our mutual contract, which provides for me to have unfretted access to my property which you have denied me. I will rescind the invoice for the time my staff spent on Thursday to correct the files damage by your hardware system. During the sixty day cancelation period I will not charge you for uncorrupting files that your hardware system may again corrupt.
I expect to be paid for all monthly fees due under the contract. I expect all off site backups of the LT directory to be destroyed and no daily backup of the LT and I expect you to forbid Vincent from looking into my system which my contract forbids. Your data is on your system and has always been there. If there exist corruption on the data base due to your hardware, I will fix it

Jim Traina

**From:** Andrea Zinno [mailto:AZinno@rwk800.com]
**Sent:** Monday, May 10, 2010 2:29 PM
**To:** jtraina@amsiny.com
**Cc:** ewughalter@rwk800.com; 'Roger Corredine'; JKaufman@Rwk800.com
**Subject:** Termination of Contract

Dear Mr. Traina:

Pursuant to our conversation today, my office will give you access to the system as provided for in our Contract with you. In turn, pursuant to our Contract, you agree that you will provide unfettered workable access to the system and our data and records.

My office will do nothing to compromise your product and, likewise, you will do nothing to compromise our data, records or file server.

Thereafter, in sixty (60) days our Contract will terminate.

If this is your understanding of our conversation, please respond that you understand and agree to same. I will immediately restore access to you upon receipt of your positive reply.

1